# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **EXTRADITION CERTIFICATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:10-mj-165-PMW** |
| **GARY GAINES HIDALGO,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

On June 21, 2010, the United States of America ("USA"), acting on behalf of the Government of Mexico, filed a complaint for the extradition of Gary Gaines Hidalgo ("Defendant") pursuant to the extradition treaty between the USA and the Government of Mexico ("Treaty").[1] The complaint also sought a warrant for the provisional arrest of Defendant with a view towards extradition. This court issued the warrant, and Defendant was arrested.

On September 2, 2010, the USA filed a formal extradition packet.[2] On September 17, 2010, this court held a hearing to address the status of the case.[3] At that hearing, the court set a briefing schedule and scheduled oral argument for November 23, 2010.[4] Subsequently, oral

---

[1] *See* docket no. 1.

[2] *See* docket no. 9.

[3] *See* docket no. 10.

[4] *See id*.

argument was continued to December 21, 2010.[5]  On October 22, 2010, the USA filed its memorandum of law in support of extradition.[6]  Defendant filed his memorandum opposing extradition on November 12, 2010, and an amended memorandum opposing extradition on November 17, 2010.[7]  The USA filed its reply memorandum on December 3, 2010.[8]  On December 13, 2010, the USA filed a motion to supplement the formal extradition packet, which the court granted on December 15, 2010.[9]

On December 21, 2010, the parties came before the court for oral argument.[10]  The USA was represented by Assistant United States Attorney Brett R. Parkinson, and Defendant was represented by Assistant Federal Defender Benjamin A. Hamilton.

The court has carefully considered the parties' written submissions, as well as the arguments presented by counsel at the above-referenced hearing.  Now being fully advised, the court is prepared to rule.

---

[5] *See* docket nos. 12, 14.

[6] *See* docket no. 13.

[7] *See* docket nos. 16, 18.

[8] *See* docket no. 19.

[9] *See* docket nos. 20, 21.

[10] *See* docket no. 23.

## BACKGROUND

In accordance with Article 1 of the Treaty, Mexico has asked the USA, through diplomatic channels, for the formal extradition of Defendant so that he may be tried by Mexico on the charges of aggravated homicide and attempted aggravated homicide both committed with malice aforethought, lying in wait, or treachery. In support of its extradition request, Mexico has submitted authenticated documentation in the form required by Article 10 of the Treaty. That supporting documentation was filed separately with the Department of State and has been provided to the court.

## LEGAL STANDARDS

Extradition proceedings are governed by Chapter 209 of Title 18 of the United States Code. *See* 18 U.S.C. §§ 3181-3196. Those statutory provisions set forth the procedures for extradition and allocate responsibilities between the courts and the Secretary of State. The executive branch remains primarily responsible for extradition, while the extradition judge is assigned the limited duty of determining the sufficiency of the extradition request. That judicial function is carried out by conducting a hearing pursuant to 18 U.S.C. § 3184, and if the request is found sufficient, certifying the same to the Secretary of State.

> The larger assessment of extradition and its consequences is committed to the Secretary of State. This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy which are better answered by the executive branch.

*United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997). Thus, the Secretary is not required

to extradite the fugitive but may, in the exercise of her discretion, decline to do so. *See* 18

U.S.C. § 3186 (providing that the Secretary of State "may" order the person to be delivered to the

requesting country). With the exception of issues related to the sufficiency of the extradition

request, all issues that may be raised by the fugitive as defenses to extradition are to be

considered by the Secretary of State, not by the court conducting the extradition hearing. *See* 18

U.S.C. §§ 3184, 3186. For example, the Tenth Circuit has indicated that when reviewing an

extradition certification, it "will not inquire into the fairness of the requesting nation's justice

system." *Smith v. United States*, 82 F.3d 964, 965 (10th Cir. 1996).

An extradition hearing is not a plenary trial at which guilt or innocence is decided, but

rather is in the nature of a preliminary examination to determine whether a case is made out that

will justify the holding of the accused and his surrender to the demanding nation. *See, e.g.*,

*Collins v. Loisel*, 259 U.S. 309, 316 (1922); *see also Peters v. Egnor*, 888 F.2d 713, 718 (10th

Cir. 1989) (noting that while an accused may be able to submit proof at his criminal trial that a

different person was the perpetrator of the crime, "that is a matter for exploration during the trial

. . . and not for extensive evidentiary inquiry during the extradition hearing" (alteration in

original) (quotations and citation omitted)). The judge conducting the required hearing "thus

performs an assignment in line with his or her accustomed task of determining if there is

probable cause to hold a defendant to answer for the commission of an offense." *Ward v.*

*Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990). The standard of proof to find the evidence

sufficient to sustain the charge pursuant to 18 U.S.C. § 3184 is equivalent to the domestic

requirement of probable cause. *See Smith*, 82 F.3d at 965 (providing, in the context of

extradition, that probable cause is established when there is "sufficient evidence to support a

reasonable belief that appellant was guilty of the crime charged" (quotations and citations

omitted)).

The limited nature of the extradition hearing has resulted in special procedural and

evidentiary rules. The Federal Rules of Criminal Procedure and the Federal Rules of Evidence

are inapplicable in extradition proceedings. *See* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not

governed by these rules include . . . the extradition and rendition of a fugitive . . . .");

Fed. R. Evid. 1101(d)(3) ("The rules (other than with respect to privileges) do not apply in . . .

[p]roceedings for extradition or rendition . . . ."). Instead, 18 U.S.C. § 3190 provides:

> Depositions, warrants, or other papers or copies thereof offered in
> evidence upon the hearing of any extradition case shall be received
> and admitted as evidence on such hearing for all the purposes of
> such hearing if they shall be properly and legally authenticated so
> as to entitle them to be received for similar purposes by the
> tribunals of the foreign country from which the accused party shall
> have escaped, and the certificate of the principal diplomatic or
> consular officer of the United States resident in such foreign
> country shall be proof that the same, so offered, are authenticated
> in the manner required.

18 U.S.C. § 3190.

A fugitive has no right to confront or cross-examine witnesses who have furnished the

evidence in support of extradition. *See, e.g.*, *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

Consequently, a certification of extradition may be, and typically is, based entirely on the

authenticated documentary evidence and information provided by the requesting government.

*See, e.g.*, *Elias v. Ramirez*, 215 U.S. 398, 409 (1910) (holding unsworn statements were admissible and sufficient to justify the fugitive's extradition). One of the reasons that extradition determinations may be based on written hearsay is that "[a]n extradition hearing does not require a higher standard of evidence than a probable cause hearing." *Kin-Hong*, 110 F.3d at 120.

> In probable cause hearings under American law, the evidence taken need not meet the standards for admissibility at trial. Indeed, at a preliminary hearing in federal court a finding of probable cause may be based upon hearsay in whole or in part. This is because a preliminary hearing is not a minitrial of the issue of guilt; rather, its function is the more limited one of determining whether probable cause exists to hold the accused for trial. An extradition hearing similarly involves a preliminary examination of the evidence and is not a trial.

*Id*. (quotations and citations omitted).

Extradition treaties ordinarily do not require, or even anticipate, the testimony of live witnesses. Indeed, in this case, Article 10 of the Treaty refers only to the submission of documents and evidence. Furthermore, the Supreme Court has indicated that requiring live testimony would defeat the object of treaties. Specifically, the Court stated:

> It is one of the objects of [a prior version 18 U.S.C. § 3190] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty.

*Bingham*, 241 U.S. at 517.

Due to the nature and limited purpose of an extradition hearing, as well as the importance of the international obligations of the United States under an extradition treaty, a fugitive's

ability to present evidence at an extradition hearing is extremely limited. *See, e.g.*, *Loisel*, 259

U.S. at 316. "Because extradition courts do[] not weigh conflicting evidence in making their

probable cause determinations," *Barapind v. Enomoto*, 400 F.3d 744, 750 (9th Cir. 2005) (en

banc) (per curiam) (alteration in original) (quotations and citation omitted), a fugitive may not

introduce evidence that contradicts the evidence submitted on behalf of the requesting country.

He may, however, introduce evidence that explains the submitted evidence, but explanatory

evidence has a narrow meaning in the extradition context. "Generally, evidence that explains

away or completely obliterates probable cause is the only evidence admissible at an extradition

hearing, whereas evidence that merely controverts the existence of probable cause, or raises a

defense, is not admissible." *Mainero v. Gregg*, 164 F.3d 1199, 1207 n.7 (9th Cir. 1999).

## ANALYSIS

The Supreme Court has indicated that an extradition certification is in order where:

(1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has

jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crime for

which surrender is requested is covered by the applicable treaty; and (5) there is sufficient

evidence to support a finding of probable cause as to the charge for which extradition is sought.

*See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

The USA asserts that the first four elements are satisfied in this case, and Defendant does

not dispute that assertion. The court agrees with the USA and concludes that the first four

elements are indeed satisfied in this case. First, this court is authorized to conduct the instant

extradition proceeding pursuant to 18 U.S.C. § 3184. *See* 18 U.S.C. § 3184. Second, the court

has jurisdiction over Defendant pursuant to the same statutory provision. *See id.* Third, pursuant to the undisputed declaration provided by the USA, the Treaty is in full force and effect. Fourth, for the reasons set forth in the relevant portions of the USA's memorandum of law in support of extradition, the crimes for which Defendant's extradition is sought are covered by the Treaty.

The court now turns to the final element, which is the focus of Defendant's arguments. Defendant makes several arguments to support his assertion that there is insufficient evidence to support a finding of probable cause. Defendant argues that (1) the official evidence submitted by the USA has been falsified or distorted; (2) the official evidence is contradictory and, on its face, insufficient to support a finding of probable cause; and (3) the most significant portions of the official evidence are witness statements that have since been recanted, and the court should accept the more recent recantations as being more credible. The court will address those arguments in turn.

First, Defendant argues that the court should either give little weight to or not consider the official evidence because it has been falsified or distorted. Alternatively, Defendant argues that the court should require the officials seeking Defendant's extradition to come forward with live witnesses. Those arguments fail. As the court indicated above, with the exception of issues related to the sufficiency of the extradition request, all issues that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by the court conducting the extradition hearing. *See* 18 U.S.C. §§ 3184, 3186. Indeed, the Tenth Circuit has instructed that an extradition court "will not inquire into the fairness of the requesting nation's justice system." *Smith*, 82 F.3d at 965. With respect to Defendant's alternative request for live

witnesses, the relevant legal principles discussed above clearly demonstrate that Defendant has

no right to confront or cross-examine witnesses who have furnished the evidence in support of

his extradition. *See, e.g.*, *Bingham*, 241 U.S. at 517. In addition, the court has determined that

the Treaty does not require, or even anticipate, the testimony of live witnesses because Article 10

of the Treaty refers only to the submission of documents and evidence. Consistent with Supreme

Court precedent, this court believes that requiring live testimony would defeat the object of the

Treaty. *See id.*

Second, Defendant argues that the official evidence is contradictory and, on its face,

insufficient to support a finding of probable cause. The court disagrees. Although Defendant

asserts that his argument is based only on the contents of the official evidence, he relies, at least

in part, on his own contradictory evidence. As discussed above, contradictory evidence is not

allowed in extradition hearings. *See, e.g.*, *Loisel*, 259 U.S. at 316; *Barapind*, 400 F.3d at 750;

*Mainero*, 164 F.3d at 1207 n.7. Defendant also asks for determinations about the weight of

conflicting evidence, but "extradition courts do[] not weigh conflicting evidence in making their

probable cause determinations." *Barapind*, 400 F.3d at 750 (alteration in original) (quotations

and citation omitted). The court will not turn this extradition proceeding into "a minitrial of the

issue of guilt . . . . An extradition hearing . . . involves a preliminary examination of the evidence

and is not a trial." *Kin-Hong*, 110 F.3d at 120 (quotations and citations omitted). The court has

determined that Defendant's arguments are without merit and concludes that the official evidence

is sufficient to support a finding of probable cause.

Third and finally, Defendant argues that the court should either give little weight to or not consider the official evidence because the most significant portions are witness statements that have since been recanted, and the court should accept the more recent recantations as being more credible. That argument also fails. Most, if not all, of the evidence Defendant relies upon to support his arguments is contradictory evidence, which the court has already indicated is not allowed in extradition proceedings. *See, e.g.*, *Loisel*, 259 U.S. at 316; *Barapind*, 400 F.3d at 750; *Mainero*, 164 F.3d at 1207 n.7. In addition, pursuant to 18 U.S.C. § 3190, once evidence is properly authenticated, it "*shall be received and admitted as evidence*," 18 U.S.C. § 3190 (emphasis added), and "[p]roperly authenticated documents submitted with an extradition complaint must be considered by the court in an extradition hearing." *In re Extradition of Grace Chan Seong-I*, 346 F. Supp. 2d 1149, 1161 (D.N.M. 2004). The documents filed in this case are accompanied by a certification from the United States Ambassador at the United States Embassy in Mexico, and Defendant does not dispute that the documents are properly authenticated.

The court has rejected all of Defendant's arguments concerning the fifth and final factor of probable cause. Accordingly, the court concludes that the fifth factor is satisfied in this case. Put another way, the court concludes that there is "sufficient evidence to support a reasonable belief that [Defendant is] guilty of the crime" for which extradition is sought. *See Smith*, 82 F.3d at 965 (quotations and citation omitted).

As a final matter, the court reiterates that its inability to consider many of Defendant's arguments and supporting evidence is due to the court's limited duty in the extradition process.

Those arguments and evidence will instead be considered by the Secretary of State in making her discretionary decision about whether Defendant should indeed be extradited.

## CONCLUSION AND ORDER

Based on the foregoing, the court concludes that Defendant is extraditable for the offenses for which Mexico requested extradition. Accordingly, the USA's formal request for an extradition certification is **GRANTED**. This conclusion and order is certified to the Secretary of State, as required by 18 U.S.C. § 3184.

**IT IS SO ORDERED**.

DATED this 23rd day of February, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge